No. 48,759

STATE OF KANSAS, *Appellee,* v. BRENTZ I. GILDER, JR., *Appellant.*

(574 P.2d 196)

Opinion filed December 10, 1977.

*John D. Sherwood,* of Gray and Sherwood, P. A., of Oswego, argued the cause and was on the brief for the appellant.

*William J. Daley,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a conviction of aggravated battery (K.S.A. 21-3414), aggravated sodomy (K.S.A. 21-3506), and rape (K.S.A. 21-3502).

On June 15, 1976, an elderly woman stopped at a rest area on Highway 160 west of Parsons, Kansas. She went into the women's restroom and was attacked by a man wielding a knife. The assault was interrupted when a passing truck driver who had stopped heard unusual noises coming from the women's facilities. Thinking someone might be ill he shouted to the victim, asking if she was in need of assistance. The assailant, imitating a woman's voice, said everything was all right. Still concerned, the driver, along with another trucker who had stopped, decided to wait until the lady emerged from the restroom before leaving. Assuming the men had left, the assailant fled from the restroom and was spotted by the two men. When the victim came from the restroom and told the men she had been attacked, one man assisted her while the other pursued the assailant's vehicle. Although he lost sight of the vehicle the truck driver broadcast a description of the car and the license tag number. Approximately one hour later police spotted the vehicle and arrested defendant. Defendant was positively identified by the victim and the two truck drivers as the man at the rest stop.

On July 8, 1976, defendant was taken to the Larned State Hospital to undergo an evaluation as to his competency to stand trial. On October 13, 1976, he was returned to Labette County authorities with a letter declaring him competent to stand trial.

After preliminary hearing defendant informed the prosecutor and the district court that he intended to use the defense of insanity. When the reports of the two court-appointed psychiatrists raised doubts as to defendant's competency to stand trial, defendant moved the court for a competency hearing. At the hearing the state called Dr. Charles Befort and Dr. Warren G. Phillips. Dr. Befort testified that he was chairman of the forensic review board at Larned State Hospital where defendant was originally examined. Based upon his review of defendant he felt defendant was aware of his environment, understood the legal predicament he was in, understood courtroom procedures, and had the ability to make a plea and assist in his own defense. Dr. Phillips stated that his examination of defendant revealed defendant was aware of his surroundings, able to concentrate and remember past and recent events accurately, and could assist an attorney in his defense.

Defendant called Dr. C. J. Kurth and Dr. Ralph D. Laskey on his behalf. It was Dr. Kurth's opinion that defendant was not competent to stand trial because he was in a delusional condition. Dr. Laskey stated that defendant factually understood what was going on around him and comprehended its importance, but suffered from delusions which made it difficult to take part in his own defense. On cross-examination, however, the doctor indicated that defendant could relate facts to his attorney, assist in his own defense, and understand a judicial proceeding.

After evaluating the evidence the trial court found defendant competent to stand trial. At trial defendant presented a defense of insanity. The jury found defendant guilty as charged.

I.

Prior to trial defendant filed a motion for a change of venue, offering several newspaper articles in support of his motion. The motion was overruled.

Change of venue is governed by K.S.A. 22-2616(1). It requires that pretrial publicity be so great as to deny a defendant the opportunity for a fair and impartial trial. The change lies within the sound discretion of the trial court and will not be disturbed on

appeal where there is no showing of prejudice to the substantial rights of the defendant. (*State v. McCorgary,* 218 Kan. 358, 367, 543 P.2d 952, cert. denied, 429 U.S. 867, 50 L.Ed.2d 147, 97 S.Ct. 177; *State v. Colin,* 214 Kan. 193, 198, 519 P.2d 629.) Media publicity alone has never established prejudice. (*State v. Porter,* 223 Kan. 114, 574 P.2d 187.) The burden of proof is cast upon the defendant to show prejudice in the community, not as a matter of speculation but as a demonstrable reality. (*State v. Porter,* supra; *State v. Gander,* 220 Kan. 88, 92, 551 P.2d 797; *State V. McCorgary,* supra; *State v. Cameron & Bentley,* 216 Kan. 644, 646, 533 P.2d 1255; *State v. Randol,* 212 Kan. 461, 463-64, 513 P.2d 248.)

In this case defendant presented only newspaper articles in support of his motion for change of venue. No evidence or affidavits were introduced to establish the effect publicity might have on prospective jurors. It does not appear that jury selection was inordinately difficult due to pretrial publicity, or that jurors were even aware of the publicity. The trial court properly denied a motion for change of venue under those circumstances.

Because the case arose in a rather sparsely populated community, defendant urges this court to take judicial notice of the effect of any publicity and find prejudice per se. We decline to adopt defendant's suggestion. Any motion for change of venue must be supported by demonstrable evidence, regardless of where the case may arise.

II.

Defendant challenges the sufficiency of the evidence supporting the trial court's finding that he was competent to stand trial. Specifically, defendant argues he was incompetent to stand trial because he was suffering from delusions and was out of contact with reality to the degree that he could not relate the facts of the crime.

It has long been the law that persons are not to be tried while they are insane. (*State v. Hamrick,* 206 Kan. 543, 547, 479 P.2d 854; *State v. Severns,* 184 Kan. 213, 218, 336 P.2d 447, and authorities cited therein.) The rule is designed to protect persons from being put on trial at a time when they are unable to properly defend themselves. (*State v. Hamrick,* supra.)

Under K.S.A. 1976 Supp. 22-3302 a trial court is required to determine a defendant's competency to stand trial when the issue

is raised. The test of competency of an accused is set forth in K.S.A. 22-3301(1), as well as in case law. In *Van Dusen v. State,* 197 Kan. 718, 421 P.2d 197, this court said:

"The test of insanity of an accused precluding his being put on trial for a criminal offense is his capacity to comprehend his position, understand the nature and object of the proceedings against him and conduct his defense in a rational manner. If the defendant in a criminal action is capable of understanding the nature and object of the proceedings pending against him, if he rightly comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound." (Syl. 4.)

(See also, *State v. Holloway,* 219 Kan. 245, 547 P.2d 741; *State v. Randol,* supra; *State v. Hamrick,* supra; *State v. Childs,* 198 Kan. 4, 422 P.2d 898; *Kiser v. State,* 196 Kan. 736, 413 P.2d 1002.)

On two occasions this court has considered the effect memory loss may have on a defendant's competency to stand trial. In *State v. Blake,* 209 Kan. 196, 495 P.2d 905, the defendant argued he was incompetent to stand trial because he was suffering from hysterical amnesia. This court held that a defendant should not be declared incompetent to stand trial merely because he cannot remember all the events which comprise the criminal charge he faces; rather a trial court must determine whether the illness prevents him from making a rational defense. Cited in *Blake* is *State v. Severns,* supra. There the defendant suffered from schizophrenia, resulting in a memory loss. The court held that memory loss alone does not render a defendant incompetent; competency must be determined from all the facts and circumstances in each case.

In the case at bar all four doctors agreed defendant had severe emotional problems; however, the doctors disagreed on the effect the mental illness had on his competency to stand trial. Three of the doctors agreed defendant understood the nature and purpose of the proceedings and was aware of his environment. The fourth doctor agreed defendant was reasonably aware of what a trial, judge, and prosecutor were, but was not sure defendant could relate the facts because of his delusional state. In response to this Dr. Laskey stated that defendant had the capacity to relate the facts of the crime to assist his attorney in his defense.

A reviewing court is limited to an inquiry into whether the trial court's finding of competency amounted to an abuse of discre-

tion. (*State v. Lewis*, 220 Kan. 791, 796, 556 P.2d 888; *Johnson v. State*, 208 Kan. 862, 863, 494 P.2d 1078; *State v. Childs*, supra.) Our careful examination of the record reveals the trial court did not abuse its discretion in this case.

### III.

The next point concerns defendant's dress while before the jury. Except for clothes defendant was wearing, all his personal effects were destroyed when he set his car on fire at the time of arrest. At trial the jailer provided defendant with a pair of relatively new blue coveralls and a pair of tennis shoes. A cellmate loaned defendant a wool-lined jean jacket. None of the clothing had markings which indicated it to be jail clothing. On the first day of trial defense counsel objected to the way his client was dressed. The trial court made a finding that the clothing was relatively new, neat and clean, and was not distinctive as jail clothing or prejudicial to defendant.

This court recently discussed this issue in *State v. Hall*, 220 Kan. 712, 556 P.2d 413. There the court said it is constitutionally impermissible to require the accused to stand before a jury in distinctive jail clothing as it places a badge of guilt upon him which destroys the presumption of innocence. Justice Fromme, speaking for the court, advised the practice be discontinued if it exists. We iterate that warning.

In the present case defendant's dress was not prejudicial. The clothing was not distinctive to the jury as jail garb. We are concerned that the county could do no better than provide defendant with a pair of coveralls and tennis shoes in which to make his court appearance. The outfit could hardly do much for defendant in the eyes of the jury.

### IV.

Defendant next contends the trial judge stepped out of his impartial role by asking questions of witnesses which established the chain of custody for certain exhibits. There is no merit to the argument. The record discloses very few questions were asked and those were designed to help the trial judge determine whether the chain of custody had been properly established.

A defendant in a criminal case is entitled to a fair and impartial trial before a fair and unbiased judge. However, it is the duty of the trial judge to see that the trial is properly conducted and the truth is fully developed. (*State v. Jones*, 204 Kan. 719, 466 P.2d

283.) In order to meet this goal it is proper for the trial judge to take measures reasonable under the circumstances to develop the truth of the matter in issue. Such conduct is not prejudicial unless it would reasonably influence the minds of the jury against the defendant, denying him the right to a fair trial. (*State v. Norwood,* 217 Kan. 150, 535 P.2d 996; *State v. Bean,* 179 Kan. 373, 295 P.2d 600.)

In *Norwood* we approved the trial court's assistance in helping the prosecutor properly rephrase an otherwise objectionable question. Similarly, in *State v. Atherton,* 151 Kan. 370, 100 P.2d 63, we approved a trial judge's conduct in asking a witness a few questions on the subject of value. In the instant case the questions asked by the trial judge were only for the purpose of determining whether certain items of physical evidence were admissible. Not only was no prejudice shown by defendant, but it appears the trial court's conduct was a highly commendable effort to insure proffered evidence was admissible.

### V.

Upon the reading of the jury's verdicts the trial court ordered defendant and his counsel to approach the bench. The judge then informed defendant of the verdicts and asked whether defendant was presently in custody. Upon receiving an affirmative reply the judge instructed defendant to return to jail with the sheriff.

Defendant argues the act of removing him from the courtroom before the jury had been discharged violates K.S.A. 22-3405(1) and entitles him to a new trial. The statute states:

"The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of the sentence, except as otherwise provided by law. . . ."

Defendant's argument is patently frivolous. The trial was over and the verdict of the jury had been received by the trial court, so there is no conceivable way defendant could have been affected.

### VI.

Defendant, after being apprehended, was taken to a local hospital for treatment for gunshot wounds suffered during arrest. Thereafter, he was transferred to a Wichita hospital for further treatment. During the trip defendant told police several stories about the incident at the rest area. In the last of these he admitted the facts of the crime.

The trial court reviewed evidence on the admissibility of the statements in a *Jackson v. Denno* hearing. The emergency room doctor testified that defendant was treated for the gunshot wounds and had not been given any drugs or painkillers before being transferred to Wichita by ambulance. He further testified that although defendant was in mild shock when brought into the hospital, he had stabilized and was not in shock or likely to go into shock during the trip to Wichita. Defendant appeared to be rational, and understood and answered questions posed to him. The police officer who accompanied defendant testified that he read defendant his *Miranda* rights prior to the time the ambulance left for Wichita. Defendant acknowledged he understood his rights, but indicated he wanted to talk to the officer. The officer testified that the two talked freely, in fact very casually, and that defendant did not express a desire to discontinue the conversation at any time. While it appeared defendant was in some pain, it did not appear to be intense. The officer stated that at all times defendant appeared to be rational and did not appear to be under the influence of drugs or alcohol, although he did know defendant had been drinking before he was arrested. The court found the statements were freely and voluntarily made.

Defendant now argues that under the totality of the circumstances it was impossible for him to make a voluntary and intelligent waiver of his rights and the statements were therefore not admissible. He argues the statements were involuntary because he was mentally incompetent, he was wounded and in shock, and he was under the influence of alcohol.

The scope of review of an appellate court with regard to the admissibility of confessions has been stated many times. When a trial court conducts a hearing pursuant to K.S.A. 22-3215, determines an extrajudicial statement was freely, voluntarily and intelligently given, and admits the statement into evidence at trial, an appellate court will accept such determination if it is supported by substantial competent evidence. (*State v. Thompson & Pennington,* 221 Kan. 165, 169, 558 P.2d 1079; *State v. Kanive,* 221 Kan. 34, 38-39, 558 P.2d 1075; *State v. Law,* 214 Kan. 643, 522 P.2d 320.)

In a criminal case there is a presumption of sanity and if the accused attacks the voluntariness of his confession on the ground of mental incompetency at the time the confession was given it is

incumbent on the accused to overcome the presumption by substantial competent evidence to substantiate his claim. (*State v. Soverns,* 215 Kan. 775, 777, 529 P.2d 181; *State v. Harden,* 206 Kan. 365, 480 P.2d 53.) The test for determining whether the defendant has overcome the presumption of sanity, thus precluding his ability to make a voluntary confession, is the same test as the test for determining his criminal responsibility for committing the crime. (*State v. Buckner,* 221 Kan. 117, 119, 558 P.2d 1102; *State v. Wright,* 219 Kan. 808, 810, 549 P.2d 958; *State v. Pyle,* 216 Kan. 423, 532 P.2d 1309.) In Kansas this is the *M'Naghten* test; that is, whether the accused was capable of distinguishing between right and wrong at the time of making a confession. In the absence of a finding of insanity according to the *M'Naghten* standard, the mental condition of a defendant at the time of making a statement is relevant to the issue of voluntariness, but it is not necessarily conclusive; its weight is for the trier of fact. (*State v. Wright,* supra; *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279; *State v. Brunner,* 211 Kan. 596, 507 P.2d 233.)

There is substantial evidence to support the finding of voluntariness made by the trial court. There was no evidence of coercion or mistreatment by the police. Defendant, although mentally disturbed, was shown to be rational and aware of what he was doing.

## VII.

Defendant objects because evidence was admitted concerning his arrest. His objection is based on K.S.A. 60-455. The point has no merit. Acts done or declarations made before, during or after the happening of the principal fact may be admissible as part of the *res gestae* where the acts are so closely connected with it as to form in reality a part of the occurrence. (*State v. Platz,* 214 Kan. 74, 76, 519 P.2d 1097; *State v. Martin,* 208 Kan. 950, 495 P.2d 89.)

## VIII.

During the course of closing argument the prosecutor told the jury they were the "conscience of the community." Defendant objected. There are a multitude of cases dealing with improper remarks of a prosecutor during closing argument. (See, *e.g., State v. Watkins,* 219 Kan. 81, 547 P.2d 810; *State v. Norwood,* supra.) None of the remarks made here violate the rule set forth in those cases.

## IX.

Defendant argues the charge of aggravated battery should have been dismissed because of insufficient evidence that the cut on the victim's arm was made with defendant's knife. He further argues the jury should have been instructed on the lesser offense of simple battery.

Under the facts adduced at trial, defendant was either guilty of aggravated battery or nothing. The fact the victim did not see herself being cut with the knife does not require the aggravated battery charge to be dismissed. The jury could deduce that the cut must have been made with the knife defendant held in his hand when he attacked his victim. (See, *State v. Wright,* 221 Kan. 132, 557 P.2d 1267; *State v. Buckner,* supra; *State v. Taylor,* 217 Kan. 706, 538 P.2d 1375; *State v. Masqua,* 210 Kan. 419, 502 P.2d 728, cert. denied 411 U.S. 951, 36 L.Ed.2d 413, 93 S.Ct. 1939.)

## X.

Defendant complains of several instructions given to the jury by the trial court. Each of the instructions challenged is supported by case law of this state. Collectively, the instructions properly instructed the jury. The arguments of defendant are without merit.

## XI.

After trial defendant sought court permission to recall certain jurors to elicit testimony from them on how they reached their verdict. The trial judge refused to grant the motion. Under K.S.A. 60-441 it was proper for the trial court to do this. Defendant sought to delve into the mental processes of the jurors in reaching their verdict, a practice forbidden by the statute and case law. (*State v. Childers,* 222 Kan. 32, 39, 563 P.2d 999; *State v. Myers,* 215 Kan. 600, 527 P.2d 1053; *Kincaid v. Wade,* 196 Kan. 174, 410 P.2d 333.)

## XII.

Finally, defendant contends the sum total of all his allegations of error demonstrates he was denied a fair and impartial trial and was convicted because of jury passion and prejudice. We do not consider this argument any more meritorious than the previous arguments.

The judgment of the trial court is affirmed.